Morgan *v.* Morgan.

## JAMES R. MORGAN.

*v.*

## CHARLES MORGAN et al.

48  399
50  474

1. When a party claims by his bill that he has been acting as trustee or agent, and, as such, is entitled to an account with his *cestui que trust* or principal, it is his duty to present with his bill his account, and if he fails to do so it is proper for the court, after the taking of testimony, and upon the hearing, when a reference to à master is asked for, to suspend the hearing and require the complainant to make and present such account.

2. A party who is guilty of great delay in presenting his accounts, or of negligence in keeping them, will not be heard with favor; yet, great liberality will be extended where the transactions relate to the family interest of both parties.

3. Where the statement of an account shows upon the face of it such great uncertainty that the court finds it impossible to come to a fair, just conclusion as to the liability of the different parties, an account will not be ordered.

4. Where the mortgagor asks to redeem, the burden is upon him; unless he shows that the mortgagee has been in possession.

5. Where it appears that the mortgagee has been in possession, and he is called upon to account for the rents and profits and he fails to do so, his mortgage will be declared satisfied.

6. When a bill has been filed for an account both parties are actors.

On bill for an accounting and to redeem.

*Mr. Abraham V. Schenck,* for the complainant.

*Messrs. Collins & Corbin* and *Mr. Charles T. Cowenhoven,* for the defendants.

BIRD, V. C.

The bill of complaint shows that the testator died on the 1st day of September, 1852. He left his widow and five children him surviving. By his will he directed as follows:

"I give and bequeath unto my beloved wife Elizabeth Morgan in addition to her right of dower in my lands the use of all my household goods and furniture of any kind and description during her widowhood, and in case she

should die or marry then it is my will and I do order my executors to-divide the same, one-third part to my daughter Ann Elizabeth and the other two-thirds equally among my sons. It is my will and I do order all my horses, mules, oxen, cows, hogs, carriages, carts, waggons, cars, sleighs, harness, ploughs, and all my farming utensils of every kind and description to be and. remain on my homestead farm for the use and benefit of my children as my executors may think most proper. * * * It is my will and I do order that all my children be educated, maintained and supported from the income of my clay banks and out of my estate until my son Charles Morgan arrives to the age of twenty one years.

"I give and devise all my lands to my children and their heirs to be equally divided between them, the said division to be made when my son Charles arrives at the age of twenty one years, and my sons in order of their ages to have their choice and my daughters next in order of their ages excepting therefrom all clay banks that may be found in or on my said lands which said clay banks I give and devise equally to my sons to have possession of said clay banks when my son Charles Morgan arrives to the age of twenty one years. * * *

"I give and bequeath to my children all my personal estate to be equally divided between them when my son Charles Morgan arrives at the age of twenty one years. It is my will and I do order that all my moneys now out at. interest be kept out at interest on good security and I do order that all my book accounts be collected, and all the rents and all the income from my clay banks be put out at interest on good security until my son Charles Morgan arrives at the age of twenty one years and then be equally divided between my children except what may be used for the educating and maintaining my children and repairing my ditch banks."

He appointed his four sons executors. The eldest was then nineteen years of age and the youngest nine, the other child being a daughter, about eleven. The eldest son, James R., who is the complainant, although but nineteen years of age, offered the will for probate, qualified as executor and took upon himself the burden of the administration of the estate under the will. He conducted the business until his brother arrived at the age of twenty-one years, which was in the year 1857. The executor claims that up to this period of time he conducted and managed the affairs as executor, but from thence onward until 1876 as for himself as one of the tenants in common of the whole estate, and as agent for his three brothers and sisters, the other tenants in common. The estate consisted, according to the inventory, which the executor says he prepared for filing, but which was not filed, to $13,190.35 and a large tract of valuable farming

land, valuable clay banks and valuable timber lands, in all over six hundred acres, and at about the time of the death of the testator worth over $100,000.

This is the first effort had at accounting by the executor. He filed his bill in 1882, about thirty years after he took upon himself the burden of the trust. Before the filing of the bill, his brothers and sister, claiming to hold the whole interest in the real estate, had commenced proceedings in partition for a division thereof. Whether that step taken by his brothers and sister prompted the filing of this bill for an account or not, it is sufficient to say that the bill prays for an accounting not only between the executor and the legatees and devisees under the will, but for an accounting between the executor, James R., as mortgagor, of all the real estate of which the testator died seized, and his brothers and sister as mortgagees, together with a prayer for redemption. The executor claimed by his bill that at the period fixed by the will for the termination of his trust as executor (that is, when Charles came of age), the estate was indebted to him over $2,000, and that in 1876, when he ceased to act as agent for his brothers and sister in the management of the premises, they were indebted to him in the sum of $58,717.10.

The answer of the defendants emphatically denies any such liability and insists that, upon an accounting, the complainant will be found to be largely indebted to them, and prays that an accounting may be had.

A very great deal of testimony was taken in the cause. The case was set down for hearing, and extensive arguments were heard upon both sides, and it appeared to the court upon such argument that no account was presented by the executor except for the first five years, and that because there was no stated account annexed to his bill of complaint or otherwise for the guidance of the court, and the entire balance of affairs between the parties being in almost inextricable confusion because of the absence of such account, the court, upon its own motion, ordered the further proceedings in the cause to be suspended until the executor should, at his own cost and expense, prepare and produce a stated account. It was thought to be highly unjust to

impose such labor upon the court or upon any master.  It was
also regarded as one of the first duties of any person acting as
trustee, when he calls others to an account and the burden of
accounting be upon his side, to present, with his complaint or
petition, his own account.  This course was no sooner resolved
upon than the importance and justness of it became manifest,
for the complainant immediately asked for ninety days in which
to state his account, all of which time and more was consumed
before he could be ready to file the same.  This course was
enforced by the court, not only for the reasons just stated, but
that the proceedings might appear to be in a reasonably proper
form and sufficiently complete, in case, for any reason, there
should be an appeal at any stage from the order or decree of this
court.

After the bill was amended, in compliance with the order just
mentioned, an answer was filed in which, amongst other things,
it was insisted that the complainant had been guilty of gross
laches; that nothing was due to him; that materials for an
accounting had been lost or destroyed, and that they should be
dismissed with their costs.

I think the doctrine, that a party who asks the aid of a court
of equity must show reasonable diligence, or he will not be
heard with favor, is applicable to this case.  It is extremely dif-
ficult to believe that fair and just accounts have been kept by
James R. Morgan, of all his transactions, since the year 1852,
between himself and those with whom he dealt, in the manage-
ment of the farm and the clay banks upon the one hand, and his
mother and brothers and sister upon the other.  In saying this,
I have in full view the situation of the parties.  James R., when
he took upon himself the duties of executor, was only about
nineteen years of age.  He had spent the most of his earlier
years at school, from whence he was called by his father only a
short time before his death.  A few months at the most was all
the time given to James R. to learn anything about the nature
and extent of his father's farming and clay business.  But the
task of managing these he manfully undertook.  During the
greater part of the year, for several years, he employed from

Morgan *v.* Morgan.

twelve to eighteen hands to assist in the management and work-ing of the farm and clay banks. The clay was transported chiefly to different localities in the State of New York. He had all this care and management upon himself. A moment's reflec-tion will satisfy any person accustomed to the farming business and of mining and disposing of minerals of any kind, that the task which James R. had thus undertaken required constant attention. It is perfectly clear that nothing short of the most scrupulous exactness in keeping accounts would enable him to do justice to himself and to his *cestuis que trust.* All of these considerations have induced me to regard the position which the complainant occupies with a very great deal of liberality.

But these considerations are enforced by the fact that James R., his mother and brothers and sister occupied the homestead together until the mother was married in 1858, and that he and his brothers and sister, when they were not at school, occupied the same homestead until the year 1865, when it was destroyed by fire. This was two years or more after the youngest child arrived at maturity. During all of this period of time all the provisions of the household were provided by James R. from the farm or with the produce of the farm. It is true, in 1857 James R. was married and immediately brought his wife to the homestead, where she resided and enjoyed, without cost, the same bounties that were provided for the other members of the house-hold. The brothers and sister were educated at Freehold, or Princeton, or in Brooklyn. Neither of them contributed any considerable amount, if anything, by way of labor, for the benefit of the estate.

These things being so, I think it would be the duty of the court, even at this late day, to order an accounting, provided it could be had with reasonable certainty, that no great injustice would be done either to the one side or the other. I say this not by way of exception to the most favorable doctrine above alluded to, but because of the relation of the parties and the acquiescence upon both sides in the situation, and because at the time of the filing of the bill all the parties interested, who could speak upon the subject, were still living. Yet nevertheless I do

find an insurmountable objection to anything like a fair and satisfactory accounting between these parties. James R. claims that there is due to him $58,717.10. Now, how can this be from the proof before me? How can it be that he expended $58,717.10, when, according to his own showing, he only received $119,184.99. I put it in this shape because it seems to me to be not only reasonable, but perfectly safe, that I should do so, as the further consideration of the case will show. When the testator died, James R. admits that he had no estate of his own whatever. He had no resources from whence to derive an income except the estate of his father, which he at once took charge of. And, as I understand his testimony, he expended every dollar of income from that estate, so that, when Charles arrived at the age of twenty-one years, in 1857, the estate was indebted to him over $2,000. In 1861 he mortgaged his own interest in the estate for $5,000. In December, 1862, he executed a deed of conveyance to his brothers and sister for all of his interest in the real estate of which his father died seized. At the same time he took from them an instrument in the nature of a defeasance, in which was the following clause:

"Whereas, James R. Morgan have this day, by two separate deeds of conveyance of even date, sold and conveyed to my brothers and sister, Lawrence O., Charles, Ann R. and Theodore B. Morgan, all my right, title and interest in the real estate left by my father, Charles Morgan, late of the township of South Amboy, dec'd, and situate at South Amboy aforesaid & at Trenton, in said state. And whereas, the said deeds of conveyance are to secure any presumed debt, amount or sum that, on a fair and just settlement of the said Charles Morgan estate, may or shall be found due or coming from the said James R. Morgan as principal & acting executor of the said estate of his said brothers and sister; Now it is hereby declared that such is the object and intent of the said deed, and that, on payment of the said sum so aforesaid the said title will be reconveyed, or any surplus refunded the option of the said James R. Morgan."

Just before the execution of this deed, several suits were instituted against him in the State of New York. In 1867, 1868 and 1869, several judgments were recovered against him, one for $1,893.21, one for $328.86, and one for $490.95. With this condition of his own private business affairs, is it not a pertinent

question, how was it possible for James R. to spend over $58,000 upon this plantation for the benefit of his brothers and sister more than he received therefrom? This simple statement alone seems to make the conclusion to which I have come, that no satisfactory and just accounting can be had, the only safe one. But look again at the issue from this standpoint. He says that he only received $119,184.99, and expended in the interest of the other four $58,717.10 in excess of the $119,184.99. This, it will be seen at a glance, is almost one-half of the entire receipts of the estate. The just proportion of each one, of the $119,184.99, would be $23,836.99. This $23,836.99 represents the full share of James R., according to his own showing. He expended not only all the other shares, but two and one-half times his own share. This makes $34,886.11, over and above his own share, which he has expended.

But James R. insists that he did actually expend over $176,000. Taking this to be true, there is no sufficient testimony in the case to satisfy me that the estate should not be credited with at least a like amount. It is true, he says he was engaged in business in New York with his father-in-law, and that he used his own moneys for the benefit of the estate. But giving him the largest credit for advances made from this direction, and they can have no real influence upon the results to be reached from his other statements. In other words, the debtor side of the account would be largely against James R. from any possible showing by him. Supposing, therefore, that he did expend over $176,000 in and about the business of this estate as intimated, I conclude that that really represented the income from that estate. Concluding, as I have, that James R. could not have expended in the interests of the estate any more money than he received therefrom (remembering that he gave a $5,000 mortgage, executed a deed to his brothers and sister, and the numerous judgments that were obtained against him), then, if it be true his brothers and sister owe him over $58,000, it inevitably follows that he has not given the estate credit for all the moneys which he has received. But, further, if he expended over $58,000 more than his account shows he received, and if he is entitled to

that sum from the others, it would seem to follow beyond question that $176,000 even does not represent the whole estate, for the whole estate should represent the interests of James R. as well as those of his brothers and sister.   If he is entitled to $58,717.10, then the whole estate must inevitably be at least five times that amount, or $293,585.50.   And when it is considered that James R. and his family had the principal part, if not his entire living, out of this estate, then the true one-fifth would be considerably more than $58,000.   It will be observed that James R. does not say that this balance is to be distributed upon a fair adjustment of the rights of the parties between himself and his brothers and sister, but claims the entire amount, $58,717.10, as due to him from the estate.   I think, if this be true, then instead of his receipts being only $119,184.99, they were in reality over $300,000.

But this only serves to illustrate the utter impossibility for the court to order an accounting upon terms that will be fair and just between the parties.

From this view of the case as presented by the complainant, the proper practice would be to order that the complainant's bill be dismissed, were it not for the allegations therein respecting the said deed made by him in December, 1862, and delivered to his brothers and sister, and the defeasance which they delivered to him at the same time.   The insistment is that these instruments constitute a mortgage, and the complainant prays that he may be permitted to redeem the premises therefrom.

There can be no doubt that this deed was executed and delivered as security for whatever might appear to be due from James R. to his brothers and sister, and not as an absolute conveyance as between themselves, and as a certain manifestation of which the defeasance was also made and delivered.   This being so the mortgagor has the right of redemption, the general rule being, once a mortgage always a mortgage.   But when the mortgagor comes in and asks to redeem, the burden of proof is upon him.   He must establish payment, if it appears that any certain amount was ever due.   In this case, as I understand the testimony, at the execution and delivery of the said instruments there

Morgan v. Morgan.

had been and was no accounting between these parties, and there never was any effort at an accounting prior to the filing of the bill in this cause.   Hence, it appears from any view presented by the complainant that, on this branch of the case, when the foregoing statements are considered, the same uncertainty beclouds it.

However, it is alleged, and I think the proof establishes it, that the defendants were in possession of the mortgaged premises for a number of years, and it is insisted that they should account for the rents and profits, so that the balance, if any, due to them from James R. may be paid by him.   In ordinary cases this right is recognized.   But the whole case must be considered, and there is not a line in the testimony that relieves it from the embarrassments above adverted to.   I can make no application of the testimony in whole or in part which will warrant me in determining that the defendants are indebted to James R. to an amount equal to what he may be indebted to them.

But this does not dispose of all the equities between these parties because of the giving of said deed and defeasance.   While I conclude that James R. has not shown himself entitled to redeem, the defendants have not established their right to retain whatever lien those instruments may have secured to them. Having been in possession for a number of years, it was their duty to keep accounts, and when called upon for that purpose to state such accounts in a clear and explicit manner.   In their answer to the original bill they prayed an accounting and insisted that the complainant was largely indebted to them.   As above stated in their answer to the amended bill, they insisted that the complainant was guilty of laches and asked that his bill be dismissed.   With neither of their answers did they bring in any account.   Nor have they in their testimony presented any statements, or given any data, from which any fair and just account can be made.   Nothing is better settled in the practice of the court than that defendants when called upon to account must present their accounts with their answer, and to establish them by proof.   To do these things was plainly the duty of the defendants. They evidently have relied upon the weaknesses of the complain-

Morgan *v.* Morgan.

ant's case rather than the strength of their own.　In this respect, if their case had any vitality, they have been in error; for in all matters of accounting, especially where the rights of the parties spring from transactions in and about the same matters or the same business, both parties are actors, and each one must present and establish his claim in order to obtain the judgment of the court thereupon in his favor.　Therefore, having been in possession for a number of years, it was their duty to account for the rents and profits of James's interest, provided they insisted upon holding the said instruments as a lien, and, having failed in this particular, there is no ground for any equitable claim upon their part against their brother.

These observations respecting the equities of the defendants are the legitimate outgrowth of the answers of the defendants and the testimony and discussion in the cause.　Yet, while these defects appeared in the answers, they were not excepted to, and this largely justified what seemed to be the conclusion of the defendants that the entire burden of establishing the just rights of the parties had been undertaken by the complainant, and that it in reality devolved upon him.

Therefore, I conclude that the complainant is not entitled to an accounting, either as between himself as executor under the will named nor as agent or otherwise in management of the said lands and premises for his brothers and sister, nor as between himself as mortgagor in possession and them as mortgagees.　But I also conclude that the defendants have failed to show that there is anything due to them upon the said mortgage, and that therefore the same has been satisfied as to the complainant, and that it is their duty to execute releases to him for the same.　Neither party is entitled to costs as against the other.